IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN A. BLACKWELL,

              Plaintiff,

     v.

PANHANDLE HELICOPTER, INC.,
an Idaho Corporation,

              Defendant.

No. 3:14-cv-00387-HZ

OPINION & ORDER

David Jay Lefkowitz
LAW OFFICE OF DAVID LEFKOWITZ
1500 NE Irving Street, Suite 412
Portland, OR 972232

       Attorney for Plaintiff

Philip A. Rush
David W. Cramer
MARTIN BISCHOFF TEMPLETON LANGSLET & HOFFMAN
888 SW Fifth Avenue, Suite 900
Portland, OR 97204

       Attorneys for Defendant

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Defendant Panhandle Helicopter, Inc. brings this motion to dismiss Plaintiff John Blackwell's negligence claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendant's motion to dismiss is granted.

BACKGROUND

Plaintiff was a ground worker directly employed by Helmig Tree Farms ("Helmig") in Oregon.  Pl.'s First Am. Compl. ("Compl.") ¶ 1.  His job duties included hooking bundles of Christmas trees to Defendant's helicopter.  Id. ¶ 3.  Defendant is an Idaho corporation that does business in Oregon.  Id. ¶ 2.  Defendant owned and operated a helicopter to lift, transport, and deliver Christmas trees for Helmig.  Id. ¶ 19.

The Christmas tree harvesting process consisted of multiple steps.  First, Defendant's helicopter would fly toward a bundle of cut Christmas trees until it was directly, or almost directly, over the bundle.  Id. ¶ 6.  Plaintiff would stand by the bundle, about 100 feet below the helicopter.  Id.  Then, Defendant would dangle a cable and bell-shaped hooking mechanism for Plaintiff to hook the bundle to the helicopter.  Id. ¶ 5-6.  Defendant would then instruct Plaintiff to get clear and give a signal that Plaintiff was clear.  Id. ¶ 5.  After this signal, Defendant would lift the bundle.  Id.  Finally, Defendant would fly the bundle several hundred yards and drop it at a landing site before repeating the process.  Id. ¶ 6.

Plaintiff alleges that the Christmas tree harvesting process did not always go as planned.  According to Plaintiff, on multiple occasions, ground workers got caught in the ropes or rigging while trying to hook bundles of trees to Defendant's helicopter.  Id.  In early November 2013, Defendant lifted a person, flew him to the landing site as he dangled with a bundle of trees, and

2 - OPINION & ORDER

dropped him.  Id. ¶ 7.  Additionally, Defendant experienced repeated incidents where bundles of trees would "explode" and release as Defendant tried to lift them.  Id. ¶ 6.

On three occasions, Plaintiff was injured while attempting to hook a bundle of trees to Defendant's helicopter.  Id. ¶ 6.  On the first occasion, on or about October 29, 2013, Plaintiff fractured his left thumb.  Id.  On the second occasion, on or about November 9, 2013, Plaintiff fractured his left ring finger.  Id.

The third occasion forms the basis for Plaintiff's Complaint.  On or about November 15, 2013, Plaintiff was at work wearing a cast on his left arm due to his previous injuries.  Id. ¶ 8. On or about that day, he hooked a bundle of trees to Defendant's helicopter and, as Plaintiff tried to leave the area, Defendant lifted the bundle and the rope, caught Plaintiff, and "flipped" him. Id.  Plantiff landed on his back on a stump and fractured his spine at multiple levels.  Id.

The Court refers to any additional relevant facts in the discussion section below.

### STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need not accept conclusory allegations as truthful.  See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted).

3 - OPINION & ORDER

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]"  Id.

## DISCUSSION

Plaintiff brings three negligence claims against Defendant.  The first claim is a common law negligence claim.  The second claim is a statutory negligence claim under OAR 437-004-1750, the Oregon OSHA "Helicopters" rule.  The third claim is a statutory negligence claim under Oregon's Employer Liability Law, ORS 654.305 et seq.  Defendant moves to dismiss Plaintiff's claims, arguing that Defendant cannot be liable under the Oregon OSHA "Helicopters" rule because Defendant was not Plaintiff's employer, and arguing that the remainder of Plaintiff's claims are preempted by federal law.

///

///

4 - OPINION & ORDER

A.      **Claim 2 - Oregon OSHA "Helicopters" rule**

Plaintiff brings his second claim under OAR 437-004-1750, the Oregon OSHA "Helicopters" rule.  Defendant argues that Plaintiff's claim must be dismissed because Plaintiff was not a direct employee of Defendant.  Defendant is correct.

The Oregon OSHA "Helicopters" rule only applies to direct employees.  The rule is included in the Oregon Occupational Safety and Health Code (OOSHC), which was adopted pursuant to the Oregon Safe Employment Act (OSEA).  ORS 654.025(2); see also, German v. Murphy, 146 Or. App. 349, 357 (1997).  The OSEA does not extend its coverage to indirect employees.  Id. See also, Flores v. Metro Machinery Rigging, Inc., 99 Or. App. 636, 641 (1989) ("The purpose of the [OSEA] is to require an employer to take necessary steps to protect its own employees, not those of other employers.").  Plaintiff conceded at oral argument that he was not a direct employee of Defendant.[1]  Therefore, the "Helicopters" rule does not apply in this case.  Plaintiff's additional argument that the rule ought to apply to Defendant as a matter of "common sense" and to avoid "needless harm" is without support.  Pl. Resp. 14.  Therefore, the Court grants Defendant's motion to dismiss Plaintiff's second claim.

B.      **Claims 1 and 3 – Negligence under the Common Law and Oregon Employer Liability Law**

Plaintiff brings his first and third negligence claims under common law and the Oregon Employer Liability Law, respectively.  Defendant moves to dismiss Plaintiff's claims, arguing that, to the extent Plaintiff's claims are based on state law standards of care, they are preempted by the Federal Aviation Act (FAA) and its regulations. The Court grants Defendant's motion to dismiss because some of Plaintiff's allegations are preempted by the FAA.

---

[1] Plaintiff also appeared to concede at oral argument that this claim should be dismissed.

5 - OPINION & ORDER

The parties agree that the standard of care for the preempted allegations will be determined under federal law. State law will govern the other negligence elements—breach, causation, damages, and remedies. See Gilstrap v. United Airlines, Inc., 709 F.3d 995, 1006 (9th Cir. 2013).

The Court dismisses Plaintiff's complaint in order to provide Plaintiff the opportunity, as requested in Plaintiff's brief and at oral argument, to revise his claims to reflect the proper standard of care.

### 1.    Preemption Background

There are three ways that a federal law can preempt a state law. A federal law can expressly preempt a state law, or preemption can be implied either by conflict preemption or field preemption. See Gilstrap, 709 F.3d at 1003. Conflict preemption occurs when "it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 1008 (citing English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) (citation and internal quotation marks omitted)). Field preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law. Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007) (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, (1992)).

The FAA has no express preemption clause. Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009). Nor do the negligence claims at issue in this case conflict with any provision of the FAA or regulations promulgated under it. Thus, Defendant's argument rests on implied field preemption.

The touchstone of preemption is congressional intent.  Cipollone, 505 U.S. at 516 (1992).

The Ninth Circuit has determined that Congress intended for federal legislation to exclusively

occupy the field of aviation safety.  Montalvo, 508 F.3d at 473 ("Congress' intent to displace

state law is implicit in the pervasiveness of the federal regulations, the dominance of the federal

interest in this area, and the legislative goal of establishing a single, uniform system of control

over air safety."); see also, Ventress v. Japan Airlines, 747 F.3d 716, 721 (9th Cir.) cert. denied,

135 S. Ct. 164 (2014) ("The purpose, history, and language of the FAA lead us to conclude that

Congress intended to have a single, uniform system for regulating aviation safety.") (internal

quotation omitted).

However, the FAA does not preempt all state law personal injury claims related to

aviation safety.  Gilstrap, 709 F.3d at 1004.  While "pervasive regulations" in an area like

passenger warnings indicate that the FAA preempts all state law claims in *that* area, "in areas

without pervasive regulations or other grounds for preemption . . . the state standard of care

remains applicable."  Id. (citing Martin, 555 F.3d at 811).

The Ninth Circuit has established a two-part framework to evaluate whether the FAA

preempts a state law.  Id. at 1006.  First, the Court asks whether the particular area of aviation

safety implicated by the lawsuit is governed by pervasive federal regulations.  Id.  If so, then any

applicable state standards of care are preempted.  Id.  However, even if the state standards of care

are preempted, state law still governs "the other negligence elements (breach, causation, and

damages) as well as the choice and availability of remedies."  Id. (internal quotation omitted).

Several Ninth Circuit cases illustrate how the Court determines when an area of aviation

safety implicated by a lawsuit is "pervasively regulated."  In Martin, a pregnant woman fell from

an airplane's stairs and injured herself and her fetus.  Martin, 555 F.3d at 808.  The only federal

7 - OPINION & ORDER

regulation addressing airplane stairs provided that stairs could not be designed in a way that

might block the emergency exits.  Id. at 812.  The regulations said nothing about ensuring

passenger safety on stairs, such as the need to install handrails or maintain the stairs free of

slippery substances.  Id.  The Court found that this single regulation regarding airplane stairs did

not show that the FAA pervasively regulated airplane stairs.  Id.  Therefore, state tort claims

involving airplane stairs were not preempted by federal law.  Id.

In contrast, in Montalvo, the Ninth Circuit found that the area of aviation safety

implicated by passenger warnings was pervasively regulated by the FAA and, therefore, was

preempted.  Montalvo, 508 F.3d at 473.  The Court pointed to an extensive number of passenger

warnings codified in federal regulations, including oral warnings, warnings on signs and

placards, and mandatory instructions given to passengers.  Id.  "The comprehensiveness of these

regulations demonstrate[d] that the Administrator has exercised his authority to regulate aviation

safety to the exclusion of the states."  Id.  Therefore, the plaintiff was unable to bring a

negligence claim against the airline for failure to warn passengers about blood clots, because

there was no federal requirement that the airline do so.  Similarly, just last year, the Ninth Circuit

found that pilot qualifications and medical standards for airmen were pervasively regulated by

the FAA and accompanying regulations.  Ventress, 747 F.3d at 722.

In Gilstrap, a plaintiff with disabilities alleged that United Airlines did not provide the

assistance that she requested for moving through the airport.  709 F.3d at 998.  Furthermore, the

plaintiff alleged that United Airlines agents were hostile to her throughout her travels.  Id.  The

Court examined FAA regulations and found that they were pervasive as to "*when* and *where* air

carriers must provide such assistance."  Id. at 1007  (emphasis in original) (The regulations spell

out in detail that air carriers must provide assistance when a passenger with a disability requests

8 - OPINION & ORDER

it for moving "between gates to make a connection to another flight," 14 C.F.R. § 382.91(a);

"moving from the terminal entrance (or a vehicle drop-off point adjacent to the entrance) through

the airport to the gate for a departing flight, or from the gate to the terminal entrance (or a vehicle

pick-up point adjacent to the entrance after arriving flight)," including "accessing key functional

areas of the terminal, such as ticket counters and baggage claim," Id. § 382.91(b); and for

"enplaning and deplaning," Id. § 382.95(a)).  In contrast, the Court found that the FAA

regulations said nothing about "*how* airlines should interact with passengers."  Id. at 1007-08.

(emphasis in original).  Therefore, as to assistance in moving through the airport, the FAA

regulations established the standard of care and preempted any different or higher standard of

care that existed under state tort law.  Id.  However, as to the alleged hostility from United

agents, the standard of care required for the plaintiff to state a claim was based on state tort law.

Id.

Applying the Ninth Circuit's framework, the Court  first identifies the areas of aviation

safety at issue in this case—safety procedures governing helicopter pilots and ground workers in

tree harvesting using external load helicopters—and analyzes whether this area is pervasively

regulated by the FAA and its regulations.

### 2.    Claim 1 – Negligence under Common Law

Plaintiff's first claim is a common law negligence claim based on 18 allegations of

negligence.  Defendant argues that the claim is preempted by the FAA.[2]  The Court finds that 7

of Plaintiff's 18 allegations are preempted by the FAA, and 11 are not.

Plaintiff's allegations regarding Defendant's failure to follow its own external load flight

manual and failure to operate its helicopter at a safe speed and in a safe manner are preempted

---

[2] The FAA imposes a duty on a person not to "operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."  14 C.F.R. § 91.13.

because these areas of aviation safety are pervasively regulated by the FAA.  Specifically, the

allegations that the Court finds preempted are that Defendant was negligent in the following

ways:

> a.  In failing to follow Defendant's own external load flight manual instruction for having one groundcrew person for signaling while another groundcrew person hooks the load of trees to the helicopter;
> b.  In failing to follow Defendant's own external load flight manual instructions for use of groundcrew signals;
> c.  In failing to follow Defendant's own external load flight manual instructions for using the specific hand signal to the helicopter to signal when it is safe for the helicopter to move upward;
> d.  In failing to follow Defendant's own external load flight manual instructions to insure that the pilot brief all groundcrew before operations where to stand when giving the pilot hand signals, review of the hand signals and their meanings and review the precautions while working near a helicopter;
> e.  In failing to follow Defendant's own external load flight manual instructions to instruct groundworkers to use a single, reliable and exaggerated signal to use so there can be no doubt in the helicopter pilot's mind as to what the groundcrew signalman wants the pilot to do;
> j.  In operating its helicopter in an unsafe manner;
> k. In operating its helicopter at an unsafe speed;
> Compl. ¶ 9.

These allegations are preempted because there are pervasive FAA regulations regarding

both an operator acting contrary to its own helicopter flight manual and operating its helicopter

at an unsafe speed and in an unsafe manner.  As to acting contrary to its own helicopter flight

manual, the FAA regulations provide that "[n]o person may conduct a rotorcraft external load

operation without, or contrary to, the Rotorcraft–Load Combination Flight Manual prescribed in

§ 133.47."  14 C.F.R. § 133.33(a).  As to operating a helicopter at an unsafe speed and in an

unsafe manner, the FAA provides that "rotorcraft-load combination may not be operated at

airspeeds greater than those established in accordance with § 133.41 (b), (c), and (d)."  14 C.F.R.

133.45.  Furthermore, the FAA provides that "[n]o person may operate an aircraft in a careless or

reckless manner so as to endanger the life or property of another."  14 C.F.R. § 91.13.

10 - OPINION & ORDER

The FAA regulations in these areas demonstrate Congress's intent to preempt the field of aviation safety implicated by both compliance with an operator's flight manual and the actual operation of a helicopter.  For these reasons, allegations (a) through (e), (j), and (k) are preempted as to the standard of care, or duty, that an external load helicopter operator owes to a ground worker in a tree harvesting operation. Therefore, the Court dismisses these allegations from the claim.  However, Plaintiff is granted leave to amend his negligence claim to allege violations of the federal standard of care, if possible.

Plaintiff's remaining allegations, which deal with safety procedures governing helicopter pilots and ground workers in tree harvesting, are not preempted by the FAA.  These allegations provide that Defendant was negligent in the following ways:

> f.  In failing to follow Defendant's own Safety Management System Manual by failing to follow all OSHA regulations;[3]
> g.  In failing to follow Defendant's own Safety Management System Manual by failing to document any and all the accidents, incidents or events (as defined by its Safety Management System Manual) involving groundcrew and Defendant's ornamental tree helicopter harvesting operations before November 15, 2013, record any and all such accidents or incidents into its Incident Reporter Database; perform a root cause analysis; and develop a meaningful corrective plan;
> h.  In failing to use a single exaggerated signal to use with all groundcrew so there can be no doubt in the helicopter pilot's mind as to when the groundcrew signalman wants the helicopter pilot to lift the load;
> i.  In lifting or hoisting the bundle of trees before Plaintiff signaled it was safe to do so;
> l.  In failing to properly train or supervise Defendant's pilots to follow Oregon's Administrative Rules concerning the operation of Defendant's helicopters when harvesting ornamental trees;
> m.  In failing to properly train or supervise Defendant's pilots to conduct appropriate accident and safety investigations following workplace accidents;
> n.  In failing to engage in daily communication briefings before each day's work with groundcrew, including Plaintiff;
> o.  In failing to engage in daily communication briefings before each day's work with groundcrew, including Plaintiff;
> p.  In operating without a designated member of the groundcrew in the pickup area, clearly distinguishable from all other ground personnel, to operate as signalman;

---

[3] Plaintiff does not specify whether the OSHA regulations at issue are federal or state laws. In finding that the allegation is not preempted, the Court construes the allegation to refer to state OSHA regulations.

11 - OPINION & ORDER

q. In failing to ensure a constant, reliable system of communication between Defendant's helicopter pilot and a designated member of the ground crew in the pickup area;
r. In failing to exercise due care.
Compl. ¶ 9.

Unlike the allegations dealing with the flight manual or safe helicopter speeds, there is no evidence of a pervasive regulatory scheme that demonstrates Congress's intent to preempt the field of aviation safety implicated by safety procedures governing helicopter pilots and ground workers in tree harvesting.

Defendant cites multiple FAA regulations as evidence that the FAA pervasively regulates the field of aviation safety implicated by safety procedures governing helicopter pilots and ground workers in tree harvesting. Defendant cites 14 C.F.R. Part 91, which sets general operating and flight rules applicable to all aircraft, including helicopters. Defendant also cites 14 C.F.R. § 133, which sets forth standards for certification of pilots flying certain aircraft models and types, including a test of knowledge covering proper instructions of flight crew and ground workers. Section 133 also sets forth rules for external load operation, airworthiness standards for helicopters, weight and speed restrictions, quick release devices, and the external load attaching mechanism. Additionally, Section 133 requires a person applying for a rotorcraft-load combination certificate to prepare a Rotorcraft–Load Combination Flight Manual and submit it for approval by the Administrator. 14 C.F.R. § 133.47. The manual must be prepared in accordance with the rotorcraft flight manual provisions of subpart G of part 27 or 29 of Chapter 14, whichever is applicable. Id. Subparts G of Part 27 and Part 29 provide operating limitations, such as airspeed limitations (14 C.F.R. §§ 27.1503, 29.1503), as well as approved rotorcraft flight manual material (14 C.F.R. §§ 27.1581-1589, 29.1581-1589). The approved material for a rotorcraft flight manual includes operating limitations, such as air speed, as well as "[o]ther information that is necessary for safe operation because of design, operating, or handling

12 - OPINION & ORDER

characteristics." 14 C.F.R. §§ 27.1581, 29.1581.  Defendant also cites 14 C.F.R. Parts 61-67,

which set forth requirements for pilots, instructors and other airmen, including requirements for

medical certificates, special training, and offenses involving alcohol and drugs.

However, Defendant does not cite, and this Court did not find, any FAA regulation that

addresses the allegations of negligence Plaintiff brings in this claim.  Instead, several of the

applicable regulations at issue for these remaining allegations are broadly written and

demonstrate the lack of a pervasive regulatory scheme.  The regulations that control safety of

external load helicopter operations are broad and leave discretion to the operator.  For example,

the regulations governing  a flight manual's contents do not expressly address safety standards

pertaining to external load helicopter pilots and ground workers in tree harvesting, but instead

generally leave room for "[a]ny other information essential for safe operation with external

loads." 14 C.F.R. § 133.47(c)(3).  Similarly, regulations addressing helicopter safety procedures

require operators to provide flight manuals that include "[o]ther information that is necessary for

safe operation because of design, operating, or handling characteristics." See 14 C.F.R. §§

27.1581, 29.1581.  These broad safety regulations do not constitute a pervasive regulatory

scheme evidencing an intent by Congress to preempt the kinds of specific allegations brought by

Plaintiff regarding safety of ground workers.

At oral argument, Defendant's primary contention was that, even though the FAA

regulations do not expressly address safety procedures governing helicopter pilots and ground

workers in tree harvesting, Defendant's helicopter flight manual includes these safety procedures

and is therefore proof that the FAA pervasively regulates this field.  In other words, because

Defendant is required under the FAA to have a flight manual and because Defendant's manual

covers some of the areas of aviation safety implicated by Plaintiff's allegations of negligence, those allegations are preempted.  The Court is not persuaded by Defendant's argument.

In order for a person to conduct helicopter external load operations, a person must have a Rotorcraft External Load Operator Certificate issued by the FAA.  14 C.F.R. § 133.11.  A part of this certification process requires a person to prepare a helicopter flight manual and submit it for approval by the FAA.  14 C.F.R. § 133.74.  Among other provisions, the helicopter flight manual must set forth "information essential for safe operation with external loads."  Id.

However, the FAA's requirement that Defendant create a manual does not mean that the content of Defendant's manual can be used to show Congress' intent to preempt any particular field of aviation safety.  The FAA regulations require flight manuals with "information essential for safe operation with external loads."  14 C.F.R. § 133.47(c)(3).  They do not require that specific safety procedures be included in the flight manual.  Although the FAA mandates the flight manual, the safety procedures that Defendant included in its flight manual concerning pilots and ground workers were not mandated.  The Court does not find that the safety procedures Defendant elected to include in its manual are evidence of pervasive regulations in the field of aviation safety at issue in this case.

For these reasons, the Court finds that the FAA and its regulations do not establish the standard of care, or duty, that an external load helicopter operator owes to a ground worker regarding safety procedures governing the helicopter pilot and ground workers.  Specifically, for allegations (f) through (i) and (l) through (r), the standard of care is not preempted by the FAA but is instead established by common law.

///

///

14 - OPINION & ORDER

**3.      Claim 3 – Negligence under the Employer Liability Law**

Plaintiff's third claim is a statutory negligence claim under the Employer Liability Law,

ORS 654.305 et seq., based on 13 allegations of negligence.  Like the common law claim

allegations, the Court finds that the standard of care under the Employer Liability Law is

preempted for some allegations, but not for others.

The Employer Liability Law provides that an employer must use "every device, care, and

precaution that is practicable to use for the protection and safety of life and limb . . . ."  ORS

654.305.  It imposes a "heightened statutory standard of care on a person or entity who either is

in charge of, or responsible for, any work involving risk or danger."  Woodbury v. CH2M Hill,

Inc., 335 Or. 154 (2003).

Defendant argues that, as with the common law negligence claim, Plaintiff's claim under

the Employer Liability Law is preempted because the FAA has pervasively regulated the areas

that the allegations address.

The Court's analysis mirrors the analysis of the common law negligence claim above.

The Court finds that the Employer Liability Law standard of care applies to the field of aviation

safety implicated by areas which are not pervasively regulated.  The FAA standard of care

applies to the field of aviation safety implicated by areas which are pervasively regulated.

First, there is one allegation which does not apply to Defendant and is dismissed.

Allegation (l) provides that Defendant failed to "meet each and every safety standard and

regulation set forth in Oregon Administrative Rules OAR 437-004-1750…" Complaint ¶ 23.  As

discussed above, the Court finds that OAR 437-004-1750, the Oregon OSHA "Helicopters" rule,

does not apply to Defendant and therefore the allegation is dismissed.

Next, the Court finds that allegations (b) and (e) are preempted as to the standard of care.

Allegation (b) provides that Defendant was negligent "[i]n failing to follow Defendant's own

External Load Flight Manual as identified in paragraph (a)-(e)." Compl. ¶ 23. Allegation (e)

provides that Defendant was negligent "[i]n operating its helicopter to harvest trees at an unsafe

speed for the conditions." Id. These allegations are nearly identical to the allegations the Court

found preempted in Plaintiff's common law negligence claim and are preempted as to the

standard of care for the same reasons discussed above. Plaintiff is granted leave to amend these

allegations of his negligence claim to allege violations of the federal standard of care, if possible.

Finally, as to the remaining allegations, (a), (c) through (d), (f) through (k), and (m), the

Court finds that these allegations are not preempted. Like the common law claim allegations that

the Court found were not preempted, these allegations also deal with safety procedures

governing helicopter pilots and ground workers in tree harvesting. They provide that Defendant

was negligent:

> a. In failing to use every device, care and precaution that is practicable to use for the protection and safety of life and limb, to lift, transport and deliver ornamental trees;
> c. In failing to follow its own Safety Management System Manual as identified in paragraphs 9 (f) and (g), supra;
> d. In lifting or hoisting the bundle of trees before Plaintiff signaled it was safe to do so;
> f. In failing to properly train or supervise Defendant's pilots to follow Oregon's Administrative Rules concerning the operation of Defendant's helicopters when harvesting ornamental trees;
> g. In failing to properly train or supervise Defendant's pilots to conduct appropriate accident and safety investigations following workplace accidents as a means and method to prevent further accidents;
> h. In failing to engage in daily communication briefings before each day's work with groundcrew, including Plaintiff;
> i. In failing to engage in daily communication briefings before each day's work with groundcrew, including Plaintiff;
> j. In operating without a designated member of the groundcrew in the pickup area, clearly distinguishable from all other ground personnel, to operate as a signalman;
> k. In failing to ensure a constant, reliable system of communication between Defendant's helicopter pilot and a designated member of the ground crew in the pickup area;
> m. In failing to exercise due care.

16 - OPINION & ORDER

Compl. ¶ 23.

Because the Court finds that these remaining allegations are not preempted, the standard of care for these allegations is established by the Employer Liability Law.

### 4.    Leave to amend

If the court dismisses a complaint, it must decide whether to grant leave to amend. See 28 U.S.C. § 1653.  The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper, even if no request to amend the pleading was made, unless it is clear that the defective pleading cannot possibly be cured by the allegation of additional facts.  Snell v. Cleveland, Inc., 316 F.3d 822, 828 n. 6 (9th Cir. 2002) (citing Lee v. City of Los Angeles, 250 F.3d 668, 692 (9th Cir. 2001)); Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000).

Here, Plaintiff includes in his Memorandum in Opposition to Defendants' Motion to Dismiss a request for an opportunity to file an amended complaint.  The Court grants Plaintiff leave to amend his Complaint.

///

///

///

///

///

///

///

///

///

///

17 - OPINION & ORDER

CONCLUSION

Defendants' Motion to Dismiss [36] is GRANTED.  Plaintiff is granted leave to amend

the Complaint to reflect the Court's conclusions about preemption of standard of care, as

discussed above.  If Plaintiff chooses to amend his complaint, he must do so within 10 days of

the date below.

Defendant's Motion for Imposition of Sanctions Against Plaintiff for Failure to Comply

with Discovery Orders [39] is DENIED. The parties' discovery dispute was discussed on the

record at oral argument on this Motion to Dismiss and the Court provided instructions at that

time on how to proceed.

IT IS SO ORDERED.

Dated this ____ day of _____, 2015.

MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER